## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

In re:                                         §                  Chapter 11
                                               §
                                               §
TAJAY RESTAURANTS, INC., *et al.*              §                  Case No. 19-70067-TMD
            Debtors.[1]                        §                  (Jointly Administered)
                                               §

### DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 1107(a) TO ESTABLISH CRITICAL VENDOR PAYMENT PROCEDURES

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***")

hereby file this motion (the "***Motion***") pursuant to sections 105(a), 363(b), and 1107(a) of title

11 of the United States Code (the "***Bankruptcy Code***") and Rule 6004 of the Federal Rules of

Bankruptcy Procedure (the "***Bankruptcy Rules***") for entry of an order substantially in the form

attached hereto as **Exhibit A** (the "***Proposed Order***") authorizing the Debtors to establish critical

vendor payment procedures. In support of the Motion, the Debtors respectfully represent:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 1334

and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Venue

is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The basis for the relief requested in this Motion is Section 365 of the Bankruptcy

Code.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Yummy Seafoods, LLC (5494); Yummy Holdings, LLC (5580); and Tajay Restaurants, Inc. (3602). The mailing address for the Debtors, solely for purposes of notices and communications, is 3304 Essex Drive, Richardson, Texas 75082.

## **BACKGROUND**

3. On the date hereof (the "***Petition Date***"), each of the Debtors commenced cases under Chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made and no committees have been appointed in the Chapter 11 Cases.

4. The Debtors are the owner/operators of approximately 53 Long John Silver's ("***LJS***") and/or A&W Restaurants ("***A&W***") located in Texas, Oklahoma, Kansas, and Arkansas, employing approximately 610 non-insiders. Eighteen (18) of the Debtors' 53 locations are currently closed. All of the 35 operating stores are being operated as a LJS and 21 of those locations are co-branded and jointly operate an A&W together with the LJS restaurant from the same location.

5. While certain of the Debtors' stores are profitable, the Debtors as a whole are struggling to meet their obligations due to their inability to terminate a number of leases for unprofitable locations. The Debtors have identified the underperforming stores and will use the breathing spell provided by the filing of these Chapter 11 Cases to continue to analyze its locations, profitability, and potential remedies, including the immediate closure of a number of historically unprofitable locations, as well as evaluating the option of marketing and selling certain other locations or the entire enterprise. The Debtors intend to pursue either a sale of the entities as a going concern and/or the filing of a plan of reorganization that maximizes the value of their assets and business for the benefit of creditors and equity.

## RELIEF REQUESTED

6. In their day-to-day operations, the Debtors heavily rely on many suppliers and service providers. Like many businesses in the service industry, the Debtors rely on vendors to provide them with goods and services.

7. The Debtors believe that the goods and services supplied by certain of their vendors are critical to their operations in that their business, or some arm of their business, could not continue to operate without access to such goods and services. The Debtors have been able to continue to transact business with a majority of the vendors on which their day-to-day business operations depend despite nonpayment of those vendors' prepetition claims. However, nonpayment of the prepetition claims of certain of the Debtors' vendors creates a significant risk of disruption to Debtors' operations. Thus, Debtors anticipate there will be instances in which payment of the prepetition claims of certain vendors will benefit all creditors because such payment will allow the Debtors' businesses to operate in an efficient manner, preserve their going concern value, and outweigh the amount of such vendors' prepetition claims.

8. Accordingly, the Debtors request that the Court establish certain procedures governing the payment of prepetition claims of certain of the Debtors' creditors (the "*Critical Vendor Payment Procedures*"), as set forth below, by which the Debtors may pay certain amounts to a critical vendor (the "*Critical Vendor*"). In exchange for payment by the Debtors of a prepetition claim of a Critical Vendor (the "*Critical Vendor Claim*"), as defined below, the Debtors intend to require each Critical Vendor to continue to transact business with the Debtors, for such duration of time as agreed to between the Debtors and each Critical Vendor on normal and customary trade terms (the "*Customary Trade Terms*"), as set forth below, unless otherwise agreed to by the Debtors and the Critical Vendor.

## THE CRITICAL VENDOR PAYMENT PROCEDURES

9.      The Debtors are evaluating the vendors that have outstanding claims against the

Debtors as of the Petition Date and analyzing which of those vendors are critical to their ability

to operate their businesses and, hence, would qualify as a Critical Vendor.

10.     The Debtors are designating a Critical Vendor according to the following criteria:

   a. Whether (i) the goods or services supplied by a particular vendor are
      essential to the continued operation of the Debtors' businesses and cannot be
      obtained from any other vendor, or, could be obtained from another vendor but
      only at such additional cost or delay as to outweigh the cost of paying the
      prepetition claim, or (ii) whether the vendor was in possession of valuable
      property of the Debtors that is necessary to their ability to generate revenue;

   b. Whether the prepetition claim is fixed, noncontingent, liquidated, and
      undisputed, and if so, whether the cost of paying it outweighs the benefit such
      payment would have on the Debtors' estates and other creditors; and

   c. Whether such vendor would likely continue doing business with the
      Debtors notwithstanding nonpayment of its prepetition claim.

11.     According to the above criteria, the Debtors are considering, from the multiple

vendors with whom the Debtors deal, a small group of vendors that the Debtors will likely deem

to be Critical Vendors. These Critical Vendors provide goods and/or services to the Debtors

necessary to enable the Debtors to retain their reputation, customer satisfaction, and goodwill. As

many of the Debtors' facilities are located in small and rural communities, several of the Critical

Vendors are either sole-source suppliers or are the only vendors able to meet the Debtors'

volume requirements such that it would take weeks to months for the Debtors to find alternate

suppliers or service providers, or are the only suppliers of the items required for Debtors'

operations that are approved by the franchisors. In addition, many of the potential Critical

Vendors are small companies and any one payment by the Debtors represents a significant

portion of their income.

12. Failure to obtain the necessary goods and services from such vendors would irreparably harm the Debtors' businesses and could result in loss of patronage. Failure to pay the prepetition claims of the Critical Vendors would extinguish the Debtors' access to necessary goods and services because (i) the Critical Vendor providing the particular good or service will be put out of business by the Debtors' nonpayment, (ii) the Critical Vendor will refuse to continue doing business with the Debtors if their prepetition claim remains unpaid, or (iii) the Critical Vendor may choose to continue doing business with the Debtors only upon the condition that the Debtors provide more restrictive trade term accommodations such as advance deposits or payments by wire transfer prior to delivery.

13. The Debtors anticipate that there may be instances in which the Debtors will require authority to pay the prepetition claim of a Critical Vendor that has refused to continue to deal with the Debtors, that is at risk of going out of business, or that has demanded more restrictive trade term accommodations the Debtors cannot meet. The Debtors feel they will not be able to fulfill their duty to their estates and creditors to preserve the value of their businesses without the authority to pay the prepetition claims of those vendors the Debtors identify as Critical Vendors as and when such payments prove necessary.

14. Accordingly, the Debtors propose the establishment of the following procedures for payment of prepetition claims of Critical Vendors if and when such payments become necessary:

> a. First, to the extent an entity claims a lien against property of any of the Debtors' estates to secure a Critical Vendor Claim (which lien, upon advice of counsel, the Debtors reasonably believe to be valid) and to the extent payment of such Critical Vendor Claim is, in the exercise of the Debtors' business judgment, in the best interests of their estates (to include agreeing to Customary Trade Terms, defined herein), the Debtors are authorized to pay all or a portion of such Critical Vendor Claim (with the balance agreed to be treated as an unsecured claim). The Debtors shall file with the Court and provide to the UST

and the Committee (the "***Committee***," and, together with the UST, the "***Notice Parties***"), an accounting, itemized by claims paid, of any debts so paid.

b. To the extent an entity asserts any Critical Vendor Claim, the payment of which the Debtors, upon advice of counsel, reasonably believe would be authorized under existing laws related to critical vendors and payment is in the best interests of the estates (to include agreeing to Customary Trade Terms, defined herein), the Debtors may pay all or a portion of such claim (with the balance to be treated as an unsecured claim). The Debtors shall file with the Court, and provide to the Notice Parties an accounting of each such claim paid, including the bases on which payment of such claim is warranted under existing law. Upon motion of any party in interest filed within thirty (30) days of such accounting, the Debtors (and the creditor paid) shall be required to show cause why payment of such claim should be deemed by the Court to be properly authorized. If the Court determines that a payment was not properly authorized, the Debtors are authorized to, in their discretion and without further order of the Court, declare that payments made to such Critical Vendor on account of its Critical Vendor Claim shall be deemed to have been in payment of then outstanding postpetition claims of such vendor without further order of the Court or action by any person or entity. In addition, such Critical Vendor shall immediately repay to the Debtors any payments made to it on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise.

c. Any entity provided with a copy of the Order authorizing the Critical Vendor Payment Procedures shall be deemed on notice that a refusal to provide postpetition goods or services to the Debtors by reason of non-payment of any prepetition debt, and despite assurance, in the form of a deposit or prepayment, that such entity will suffer no loss through provision of postpetition goods or services, absent good cause, constitutes a willful violation of section $362(a)(6)$ of the Bankruptcy Code.

15. As a prerequisite to payment of any Critical Vendor Claim, the Debtors intend to require a Critical Vendor to agree to transact business with the Debtors postpetition on Customary Trade Terms for such duration of time as agreed to by the Debtors and the particular Critical Vendor, unless otherwise agreed to by the Debtors and that Critical Vendor.

16. Customary Trade Terms are those trade terms, which include, but are not limited to, credit terms, credit limits, historical pricing conventions, historical product

volumes, cash discounts, timing of payments, allowances, rebates, and availability and other applicable terms and programs acceptable to the Debtors, that were most favorable to the Debtors and in effect between such Critical Vendor and the Debtors at any time during the 12 month period preceding the Petition Date; provided however, notwithstanding the foregoing, payment terms shall be no less favorable than Debtors' customary terms under which they pay their vendors. If after receipt of payment for any Critical Vendor Claim, a Critical Vendor refuses to continue to provide product, supplies or services upon the Customary Trade Terms as agreed to with the Debtors, then the Debtors may (i) declare that any payment made to such Critical Vendor on account of their prepetition claim shall be deemed to have been in payment of then outstanding post-petition claims of such Critical Vendor without further order of the Court or action by any person or entity; (ii) require that the Critical Vendor immediately repay to the Debtors any payments made to it on account of their prepetition claim, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or otherwise; and (iii) seek redress with the Court for failure to comply with the Customary Trade Terms.

## BASIS FOR RELIEF REQUESTED

17. The United States Supreme Court first articulated the doctrine of necessity over a century ago in *Miltenberger v. Logansport Ry*. Co., 106 U.S. 286, 1 S.Ct. 140 (1882), *superseded by statute*, the Bankruptcy Reform Act of 1978, *as recognized in In re Kmart Corp*. 359 F.3d 866, 871 (7th Cir. 2004), *cert. denied*, 125 S.Ct. 495 (2004) in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in

receivership. *Miltenberger,* 106 U.S. at 309-14. The doctrine, largely unchanged from the Court's reasoning in *Miltenberger,* is a widely accepted component of modern bankruptcy jurisprudence. *See In re Just For Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season).

18.     Pursuant to section 105(a) of the Bankruptcy Code, the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The purpose of section 105(a) is to "assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier On Bankruptcy ¶ 105.01 (Richard Levin & Henry J. Sommer eds., 16th ed.). Section 105(a) of the Bankruptcy Code thus empowers the Court to issue any order "necessary or appropriate" to allow a debtor in possession to fulfill its duty to preserve the going-concern value of the business, including an order authorizing payment in full or in part of certain prepetition claims of unsecured creditors prior to confirmation of a plan. *In re CoServ, L.L.C.*, 273 B.R. 487, 496–97 (Bankr. N.D. Tex. 2002); *see also In re Mirant Corp.*, 296 B.R. 427, 429–30 (Bankr. N.D. Tex. 2003).

19.     Section 1107(a) of the Bankruptcy Code, which provides that a debtor in possession shall perform all the functions and duties of a trustee, contains an implied duty that a debtor in possession act as a fiduciary "to protect and preserve the estate, including an operating business's going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ,* 273 B.R. at 497).

20. The relief requested in this motion is also appropriate under section 363(b) of the Bankruptcy Code, which provides that a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition). In *In re Kmart Corp.*, the 7th Circuit expressed concern with the unfettered discretion the bankruptcy court placed in Kmart to pay critical vendors without proper evidentiary support. Although the 7th Circuit did not approve the critical vendor treatment Kmart desired, it did not prohibit critical vendor orders altogether. Instead, it noted that "[e]ven if § 362(b)(1) [sic] allows critical-vendors orders in principle, preferential payments to a class of creditors are proper only if the record shows the prospect of benefit to the other creditors." *In re Kmart Corp*, 359 F.3d at 874. Moreover, even though the 7th Circuit did not have to decide whether section 363(b)(1) could support payment of certain pre-petition debts, it noted that "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *In re Kmart Corp.*, 359 F.3d at 872. Here, Debtors have addressed critical vendor status in a measured and narrow approach, seeking such status for a very small number of vendors and providing a procedural mechanism for the yet-to-be-appointed unsecured creditors' committee, the UST, and others to challenge Debtors' decision to grant critical vendor status to any of their pre-petition creditors.

21. Courts have long recognized that payment of some categories of prepetition obligations outside the plan of reorganization is often necessary to realize the paramount goal of

rehabilitation of the debtor. *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.") (citation omitted); *see also In re Lehigh & New England Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "doctrine of necessity" permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation); *In re CoServ*, 273 B.R. at 500 (permitting chapter 11 debtors to pay the claim of a prepetition general unsecured creditor in full because the "[d]ebtors very likely must deal with [such creditor] or risk harm to their estates or their going concern value").

22. Courts routinely authorize pre-plan payment of prepetition unsecured claims when such claims are entitled to priority status under the Bankruptcy Code and it is reasonable to believe such payments will benefit the debtor's estate and creditors. *See In re CEI Roofing,* 315 B.R. at 59–61. In *CEI Roofing,* the court authorized payment of prepetition employee wage claims to the extent that such claims would have been entitled to priority status, and likely payment in full, at the time of plan confirmation (see section 503(a)(3) of the Bankruptcy Code) because early payment of the claims made "common sense" in that it prevented the debtors' employees from leaving and thus preserved their businesses. *In re CEI Roofing,* 315 B.R. at 61. As claims entitled to priority status will likely be paid in full, courts frequently authorize early payment of priority status claims when such timing and early payment is intended to prevent some harm or to procure some benefit for the estate. *Id.* at 60–61 (stating that as long as higher

priority creditors fail to timely object, authorization of early payment in full of priority claims does not trigger concerns of upsetting the priority scheme of the Bankruptcy Code nor of unfairly discriminating amongst general unsecured creditors); *see also In re CoServ,* 273 B.R. at 493 (implying that a bankruptcy court may authorize early payment of prepetition claims accorded priority treatment in instances where nonpayment could impair a debtor's ability to operate); *Equalnet Commc'ns. Corp.,* 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) (stating that a court may authorize pre-plan payment of certain priority status claims, to the extent the Bankruptcy Code affords priority status to such claims, because "[t]he need to pay these claims in an ordinary course of business time frame is simple common sense").

23.    In addition, many courts have authorized chapter 11 debtors to make payment in full or in part of the prepetition claims of nonpriority general unsecured creditors where necessary to preserve or enhance the value of the debtor's estate to the benefit of all creditors. *See In re Just for Feet, Inc.*, 242 B.R. 821 (D. Del. 1999) (authorizing payment of certain critical trade vendors); *In re Tropical Sportswear Int'l Corp.,* 320 B.R. 15 (Bankr. M.D. Fla. 2005) (authorizing payment of amounts owed to certain critical vendors); *In re Mirant Corp*., 296 B.R. at 429–30 (granting chapter 11 debtors authorization to pay prepetition claims of certain classes of "critical" vendors); *In re CoServ*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate").

24.    The court in *CoServ* noted that there are occasions when a debtor in possession's duty to preserve the business "can only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497. Rather, payment of prepetition claims is necessary, and may be authorized, whenever it is established that (1) "the debtor must deal with the claimant,"

(2) "a failure to deal with the claimant risks probable harm or eliminates an economic advantage
disproportionate to the amount of the claim," and (3) "there is no practical or legal alternative to
payment of the claim" (the "*CoServ* **Test**"). *Id.* at 498. The *CoServ* court provided an illustrative
list of situations where payment of prepetition obligations by a debtor in possession may be a
necessary predicate to preservation of the business. For example, the court noted that "[c]laims
may require payment to avoid loss of a license through the exercise of a jurisdiction's police
power." *Id.* at 497. In addition, prepetition warranty or refund claims of consumer customers fell
into this category because, if not honored, they "could so harm the debtor's good will as to
destroy its going concern value." *Id.* The court stated that, "like employees, the bankruptcy court
cannot force consumers to deal with the debtor, nor is there any practical alternative to satisfying
warranty or refund claims." *Id.* The court also noted that where "payment of a prepetition
unsecured claim is the only means to effect a substantial enhancement of the estate ... payment
would be justified." *Id.*

25.     Advance proof of necessity of payment, however, is not required in every
instance. *See In re Mirant Corp.*, 296 B.R. at 429; *In re Bombay Company, Inc.*, Case No. 07-
44084 (Bankr. N.D. Tex. 2007) [Docket No. 58]. The *Mirant* court recognized that a company
operating in chapter 11, especially early in the case, is in a "precarious position," and that serious
damage could occur to a debtor's business were a court to require advance proof that each
payment of a prepetition claim outside a confirmed plan of reorganization was necessary within
the meaning of the *CoServ* Test. *In re Mirant,* 296 B.R. at 429. Thus, because the court did not
wish to inflict serious damage on the debtors' businesses by the delay required to satisfy it that a
particular creditor should be paid, the court granted the debtors general authority to pay the

prepetition claims of critical vendors as necessary and established procedures substantially similar to those requested by the Debtors in these Chapter 11 Cases. *Id.* at 429–30.

26.     In the present case, many of the Critical Vendor Claims will be entitled to priority status as administrative expenses and likely payment in full pursuant to section 503(b)(9) of the Bankruptcy Code because such claims arise from the delivery of goods to the Debtors, in the ordinary course of business, within the 20-day period preceding the Petition Date. Section 503(b)(9) provides that:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> . . . .
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under [title 11] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). The Debtors submit that many of the Critical Vendor Claims likely arise from the delivery of goods to the Debtors in the ordinary course of business within the 20-day period preceding the Petition Date. As such, these Critical Vendor Claims would likely be entitled to administrative expense status and to payment in full ahead of general unsecured creditors. Therefore, like payments to the debtors' employees in *CEI Roofing*, authorization of payment of many of the Critical Vendor Claims would not unfairly discriminate against the Debtors' other unsecured creditors and raises merely an issue of timing.

27.     Establishment of the Critical Vendor Payment Procedures by which the Debtors may pay the claims of those vendors whom the Debtors have designated as Critical Vendors is warranted. The Critical Vendor Payment Procedures will allow the Debtors to pay the Critical Vendor Claims, many of which will likely be entitled to priority administrative expense status pursuant to Bankruptcy Code section 503(b)(9). The Critical Vendor Payment Procedures will

also ensure that no Critical Vendor holds the Debtors hostage and unreasonably demands payment of their prepetition claims. The Debtors believe that authority, but not direction, to pay the Critical Vendor Claims, as such payments become necessary, is crucial not only for the Debtors' efficient operation in chapter 11, but will avoid immediate and irreparable harm, and serve the best interests of the Debtors, their estates, and their creditors.

28. The Critical Vendor Payment Procedures, or similar procedures granting general authority to pay prepetition claims of general unsecured creditors as necessary, have been authorized in this and other districts for the payment of prepetition critical vendor claims. *See, In re Buffets, LLC,* Case No. 16-50557 (RBK) (Bankr. W.D. Tex. March 9, 2016) [Docket No. 66] (order establishing procedures to pay critical vendors); *In re Dune Energy, Inc.*, Case No. 15-10336 (HCM) (Bankr. W.D. Tex. March 10, 2015 [Docket No 36] (order authorizing debtors to pay certain prepetition obligations); *In re Mirant Corp*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. July 16, 2003) [Docket No. 32] (order establishing procedures to pay critical vendors); *In re Bombay Company, Inc.,* Case No. 07-44084 (Bankr. N.D. Tex. Sept. 20, 2007) [Docket No. 58] (interim order establishing *Mirant* procedures).

29. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should therefore be granted.

## WAIVER OF BANKRUPTCY RULES 6004(h)

30. To implement the foregoing successfully, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

31. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any prepetition claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute any prepetition claim, or (iii) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any such claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, to accept the shipment of goods, or prevent the Debtors from returning or rejecting goods in their discretion.

## **NOTICE**

32. The Debtors have provided notice of this Motion either by electronic mail, facsimile, or United States First Class mail to: (i) the Office of the United States Trustee for the Western District of Texas; (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

DATED: May 22, 2019
    Austin, Texas

         Respectfully submitted,

         WALLER LANSDEN DORTCH & DAVIS, LLP

         /s/ *Eric J. Taube*
         Eric Taube (Bar No. 19679350)
         Mark Taylor (Bar No. 19713225)
         Cleve Burke (Bar No. 24064975)
         William R. "Trip" Nix, III Nix (Bar No. 24092902)
         Evan J. Atkinson (Bar No. 24091844)
         100 Congress Avenue, Suite 1800
         Austin, Texas 78701
         (512) 685-6400
         (512) 685-6417 (FAX)
         Email: Eric.Taube@wallerlaw.com
            Mark.Taylor@wallerlaw.com
            Cleveland.Burke@wallerlaw.com
            Trip.Nix@wallerlaw.com
            Evan.Atkinson@wallerlaw.com

         *Proposed Attorneys for the Debtors and*
         *Debtors in Possession*

## CERTIFICATE OF SERVICE

    The foregoing was served on all persons on the attached list via first class mail and parties receiving the Court's ECF notification on May 22, 2019 and by email to the party listed below:

Jonathan T. Edwards
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: jonathan.edwards@alston.com

         */s/ Eric J. Taube*
         Eric J. Taube

## 20 LARGEST UNSECURED SERVICE LIST
## CONSOLIDATED

**Tajay – 20 Largest Unsecured**
DTMJ-1, LLC
Attn: David & Tara Montgomery
5134 Wright Terrace
Stokie, IL 60077

Janda Land Holdings, LLC
c/o Charles Greenough
McAfee & Taft
Two W. Second Street, Suite 1100
Tulsa, OK 74103

Comptroller of Public Accounts
P O Box 149348
Austin, TX 78714-9348

J & C Property Co.
13505 Montfort Place Suite# 200
Dallas, TX 75240

4424 Buffalo Gap Road Owner, LLC
Norman Steele
6000 Island Blvd Apt 2108
Aventura, FL 33160

Boykin Enterprises
283 North Willis, Suite 1
Abilene, TX 79603

Jan McCormick
3304 Fox Hollow Rd
Duncan, OK 73533

Department of Finance & Adm.
P O Box 3861
Little Rock, AR 72203

Central Appraisal District of Taylor Cou
P O Box 1800
Abilene, TX 79604

McLane Food Service Inc.
P O Box 115055
Carrollton, TX 75011

Interface Security Systems LLC
8339 Solutions Center
Chicago, IL 60677

OG&E Electric Services
P O Box 24990
Oklahoma City, OK 73124-0990

Nuco2 Inc.
P O Box 417902
Boston, MA 02241-7902

Center Point Energy
P O Box 4981
Houston, TX 77210-4981

Sebastian Arizpe
1611 West Kentucky
Midland, Texas 79701

Orkin, Inc.
P.O. Box 638898
Cincinnati, OH 45263-8898

The Wasserstrom Company
P.O. Box 182056
Columbus, OH 43218-2056

Green Life Landscaping and General Servi
P.O. Box 4019
Wichita Falls, TX 76308

MasterScapes, Inc.
330 Bacacita Farms Rd
Abilene, TX 79602

AEP
PO Box 24421
Canton, OH 44701-4421

**YS – 20 Largest Unsecured**
Long John Silver's Inc YRSG
PO Box 950111
Louisville, KY 40295

Oklahoma Tax Commission
P O Box 26930
Oklahoma City, OK 73126-0930

Economy Square Inc
210 Park Ave, Suite 2175
Oklahoma City, OK 73102

JLou Properties LLC
1613 N. Broadway Ave
Oklahoma City, OK 73103

McLane Food Service Inc
2085 Midway Rd
Carrollton, TX 75006-5063

Burris Valley Ranch, Inc.
c/o Joe C. Lewallen, Jr.
McAfee & Taft
211 North Robinson, 10th Floor
Oklahoma City, OK 73102-7103

Burris Valley Ranch, Inc
7300 N. Comanche
Oklahoma City, OK 73132

Comptroller of Public Accounts
P O Box 149348
Austin, TX 78714-9348

Mittal & Sons LLC
123 Blue Hill Rd
San Antonio, TX 78229

Robert Bauman
2610 S. Harrison
Amarillo, TX 79109

Joseph Beylouni
9174 Rebecca Avenue
San Diego, CA 92123

Elias G Beyloune Family Trust
Attn: Elias Beyloune, as Trustee
8712 Mulvaney Drive
San Diego, CA 92119

HotSchedules
Attn: Tina Harvey
3440 Preston Ridge Road, Suite 650
Alpharetta, GA 30005

036451-96139/4838-1189-9287.1                                                                 Page 1

John C. Mills
3122 Madison Ct
Stillwater, OK 74074

Billie M. Mills
3009 Arapaho Road
Commerce, TX 75428

Oklahoma State Dept. of Health
P.O. BOX 268815
Oklahoma City, OK 73126-8815

Bowker Land Development,
LLC
2415 N. 14th St
Ponca City, OK 74601

City of Stillwater Utility Service
PO Box 1449
Stillwater, OK 74076-1449

City of Lubbock
P.O.Box 2000
Lubbock, TX 79457

OG&E
P.O. BOX 24990
Oklahoma City, OK 73124-0990

**YH - 20 Largest Unsecured**
DTMJ-1, LLC
Attn: David & Tara
Montgomery
5134 Wright Terrace
Stokie, IL 60077

Janda Land Holdings, LLC
c/o Charles Greenough
McAfee & Taft
Two W. Second Street, Suite
1100
Tulsa, OK 74103

Dennis Semler Tulsa City Trs
500 S. Denver Ave.
3rd Floor
Tulsa, OK 74103-3840

HBIC LLC
1940 E. Walnut Street
Pasadena, CA 91107

Lane Dworkin Properties, LLC
415 Park Avenue
Rochester, NY 14607

NADG NNN LJS-AW OK LP
3131 McKinney Avenue
Suite L-10
Dallas, TX 75204

Real Estate Acquisitions
KJE LLC
5822 Charlotte Dr. Unit 3403
San Jose, CA 95123

Janda Land Holdings, LLC
Attn: David L. Egelston
101 E. Moon Valley Dr.
Phoenix, AZ 84022

STE Ventures, LLC
Attn: Steven T. Tsang
20028 SE 3rd Circle
Camas, WA 98607

August, August and Lane of
Rochester LLC
72 Canfield Rd.
Pittsford, NY 14534

AA&L II LLC
72 Canfield Rd.
Pittsford, NY 14534

Seven Cousins of Rochester
LLC
c/o Andrew August
Park Ave. Bike Shop
72 Canfield Rd.
Pittsford Rd. NY 14534

Wolter Properties, LLC
1553 Summit Shores Vista
Burnsville, MN 55306

Muskogee County
Treasurer Kelly M. Garret
P.O. Box 1587
Muskogee, OK 74402

Carolyn Kriegsman Trust
1634 South Boston Ave.
Tulsa, OK 74119-4416

A Cut Above
P.O. Box 1417
Sand Springs, OK 74063

McLane Foodservice, Inc.
2085 Midway Road
Carrollton, TX 75006

AEP Public Service Co. of
Oklahoma
P.O. Box 24421
Canton, OH 44701-4421

Mullin Plumbing, Inc.
118 S. Elm Place
Broken Arrow, OK 74012

NuCo2
P.O. Box 417902
Boston, MA 02241-7902

**Parties of Interest and Requesting Notice**

Kristopher E. Koepsel
A. Grant Schwabe, OBA
Riggs, Abney, Neal, Turpen,
Orbison & Lewis P.C.
Frisco Building
502 West Sixth Street
Tulsa, OK 74119-1010

Internal Revenue Service
Centralized Insolvency
Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

Office of the U.S. Trustee
Attn: James Rose
615 E. Houston Street, Suite 533
San Antonio, TX 78205

Jeanmarie Baer
Perdue, Brandon, Fielder,
Collins & Mott, LLP
PO Box 8188
Wichita Falls, TX 76307

Tara LeDay
McCreary, Veselka, Bragg &
Allen, PC
P.O. Box 1269
Round Rock, TX 78680

Laura J. Monroe
Perdue, Brandon, Fielder,
Collins & Mott, LLP
PO Box 817
Lubbock, TX 79408

# EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TAJAY RESTAURANTS, INC., *et al.* | § | Case No. 19-70067-TMD |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## ORDER GRANTING DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 1107(a) TO ESTABLISH CRITICAL VENDOR PAYMENT PROCEDURES

Upon consideration of the motion (the "***Motion***")[2] for entry of an order (this "***Order***")

filed by the above-captioned Debtors; and the Court having found that it has jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and

the Court having found that consideration of the Motion and the relief requested therein is a core

proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this

proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Yummy Seafoods, LLC (5494); Yummy Holdings, LLC (5580); and Tajay Restaurants, Inc. (3602). The mailing address for the Debtors, solely for purposes of notices and communications, is 3304 Essex Drive, Richardson, Texas 75082.

[2] Capitalized terms not defined herein shall have the meanings given to them in the Motion.

that notice of the Motion as set forth therein is sufficient under the circumstances; and the Court having reviewed the Motion and having considered the record at the hearing held before this Court (the "*Hearing*"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

IT IS THEREFORE ORDERED:

1. The Motion is granted as set forth herein.

2. The Debtors are authorized, but not directed, in their sole discretion, to pay or otherwise satisfy all Critical Vendor Claims up all or a portion of the Critical Vendor's Claim. The remaining amount of any Critical Vendor's Claim shall be entitled to the priority, classification, or treatment that would apply to such claim absent acceptance of a payment on a Critical Vendor Claim. Acceptance of a payment on a Critical Vendor Claim will be voluntary, and any creditor may decline to accept Critical Vendor treatment.

3. The procedures set forth in the Motion for accounting for Critical Vendor claims that are paid and for the Notice Parties or other parties-in-interest to challenge any such payments are approved and so ordered.

4. Nothing in the Motion or this Order shall impair the Debtors' rights to contest the validity or amount of any Critical Vendor Claim that may be asserted, and all of the Debtors' rights with respect thereto are hereby reserved.

5. Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory

036451-96139/4832-1064-8725.2

3

contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

6. Nothing in this Order nor the Debtors' payment of claims pursuant to this Order shall be construed as (a) an agreement or admission by the Debtors as to the validity of any claim on any grounds, (b) a waiver or impairment of any of the Debtors' rights to dispute any claim on any grounds, (c) a promise by the Debtors to pay any claim, or (d) an implication or admission by the Debtors that such claim is payable pursuant to this Order. Nothing herein shall acknowledge, grant, or otherwise permit any right of offset or recoupment by a non-debtor with respect to any claim asserted against the Debtors.

7. Notice of the Motion as provided herein shall be deemed good and sufficient and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

8. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all actions necessary to effectuate the relief grated pursuant to this Order.

10. The Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

###

Prepared and submitted by:

WALLER LANSDEN DORTCH & DAVIS, LLP

Eric Taube (Bar No. 19679350)
100 Congress Avenue, Suite 1800
Austin, Texas 78701
(512) 685-6400
(512) 685-6417 (FAX)
Email: Eric.Taube@wallerlaw.com

*Proposed Attorneys for the Debtors and*
*Debtors in Possession*