IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TAJAY RESTAURANTS, INC. | § | Case No. 19-70067-TMD |
| YUMMY SEAFOODS, LLC, | § | Case No. 19-70068-TMD |
| YUMMY HOLDINGS, LLC | § | Case No. 19-70069-TMD |
| | § | |
| Debtors. | § | |
| | § | (JOINTLY ADMINISTERED |
| | § | UNDER CASE NO. 19-70067-TMD) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
LIQUIDATION PLAN FOR
<u>TAJAY RESTAURANTS, INC. AND YUMMY SEAFOODS, LLC</u>**

DATED: September 28, 2020

CLARK HILL STRASBURGER
Stephen A. Roberts
720 Brazos, Suite 700
Austin, Texas 78701
512.499.3624
512.499.3660 (fax)
sroberts@clarkhill.com

ATTORNEYS FOR THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TAJAY RESTAURANTS, INC. | § | Case No. 19-70067-TMD |
| YUMMY SEAFOODS, LLC, | § | Case No. 19-70068-TMD |
| YUMMY HOLDINGS, LLC | § | Case No. 19-70069-TMD |
| | § | |
| Debtors. | § | |
| | § | (JOINTLY ADMINISTERED |
| | § | UNDER CASE NO. 19-70067-TMD) |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
LIQUIDATION PLAN FOR
TAJAY RESTAURANTS, INC. AND YUMMY SEAFOODS, LLC

**COMES NOW** The Official Committee of Unsecured Creditors (the "Committee") and pursuant to Chapter 11, Title 11, United States Code (the "Bankruptcy Code") proposes the following Liquidation Plan for Debtors Tajay Restaurants, Inc. and Yummy Seafoods, LLC (the "Plan"), filed contemporaneously with the *Disclosure Statement of the Official Committee of Unsecured Creditors for Debtors Tajay Restaurants, Inc. and Yummy Seafoods, LLC Under 11 U.S.C. § 1125* (the "Disclosure Statement") which contains important disclosure information regarding the Plan.

ARTICLE I
DEFINITIONS AND USE OF TERMS

1.01 **Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after May 16, 2019 in this bankruptcy case and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtors and the Debtors' property under 28 U.S.C. § 1930.

(b) **Allowed Claim** means either: (i) a Claim against a Debtor for which a proof of claim was timely filed and there have been no objections to the Claim filed, (ii) a Claim to the extent that a proof of claim, was timely filed or, with leave of the Bankruptcy Court, was late filed, and as to which no objection has been filed or, if an objection has been filed, to the extent it is allowed by a Final Order (ii) a Claim against a Debtor that is scheduled and not listed as disputed, contingent or unliquidated, except for claims by an "insider" or "affiliate" of a Debtor, as those terms are defined under 11 USC §101, which claims shall not be paid. Proofs of claims that were filed without disclosing the amount will be deemed to be filed in the amount of zero dollars. The

amount of an Allowed Claim shall be reduced by any payments made by a Debtor to such holder under the Order Granting Debtor's Motion Pursuant to 11 U.S.C. § 105(a), 363(b) and 1107(a) to Establish Critical Vendor Payment Procedures.

(c) **Bankruptcy Case** means the above-captioned jointly administered Chapter 11 cases of Tajay Restaurants, Inc. (19-70067) and Yummy Seafoods, LLC (19-70068) pending in this Bankruptcy Court.

(d) **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(e) **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtors' Bankruptcy Case.

(f) **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtors' Bankruptcy Case.

(g) **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed. The Bar Date Claims was September 19, 2019.

(h) **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(i) **Claim** means (i) any right to payment from the Debtor(s), whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor(s), whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(j) **Claimant** means any Person or entity having or asserting a Claim in the Bankruptcy Case.

(k) **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles V and VI of this Plan.

(l) **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(m) **Confirmation Date** means the date on which the Confirmation Order is entered.

(n) **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(o) **Contested Claim** means a Claim against a Debtor or its property that either (a) is listed in the Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(p) **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

(q) **Debtors** means Tajay Restaurants, Inc., a Texas corporation and Yummy Seafoods, LLC, an Oklahoma limited liability company, each, a **Debtor.**

(r) **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

(s) **Estate** means the estate of each of the Debtors created pursuant to 11 U.S.C. § 541. Individually, the Tajay Estate and the Yummy Estate.

(t) **Equity Interests** means the interest holders of an equity interest in either of the Debtors, all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

(u) **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal (generally, fourteen days after entry) has expired and as to which a stay pending appeal has not been granted.

(v) **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

(w) **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstate the maturity of such Claim as such maturity existed before such default, (iii) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such Claim receives, on account of such Claim, cash equal to the amount of such Allowed Claim.

(x) **Insider** has the meaning in § 101(31) of the Code.

(y) **Lien** shall mean a contractual or statutory lien against or security interest in an interest of either of the Debtors in real or personal property.

(z) **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

(aa) **Petition Date** means May 16, 2019 and is the date on which the Debtor filed its petition for relief, commencing the Bankruptcy Case.

(bb) **Plan** means this Liquidation Plan, as it may be amended, modified or supplemented by the Creditors Committee from time to time as permitted herein and by the Bankruptcy Court.

(cc) **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

(dd) **Property** in each case means the "Real Property" of the Debtors described in the Disclosure Statement.

(ee) **Property of the Estate** means all property in which the Debtors holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

(ff) **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

(gg) **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

(hh) **Trustee** means the trustee of the Creditors Trust created under this Plan.

(ii) **Unsecured Claim** means a Claim that is not a Secured Claim.

(jj) **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

1.02 **Number and Gender of Terms**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

1.03 **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

1.04    **Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05    **Computation of Time**. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## OVERVIEW OF PLAN

2.01    **Summary**. A trust is being created for the benefit of creditors (the "Creditors Trust'). The purpose of the Creditors Trust is to protect the rights of the Trust in the assets transferred from the Debtors and to distribute the proceeds received by the Trust to the creditors, pursuant to the terms of this Plan. The property and property rights of the Debtors shall be transferred to the Creditors Trust automatically, without further order of the Court, upon the Effective Date of this Plan.

2.02    **Property to be Transferred to the Creditors Trust**. The following property of the Debtors will be transferred to the Creditors Trust and the property of each of the Debtors shall be segregated and not commingled with the property of the other Debtor:

Tajay Restaurants, Inc.

1. All of the rights of Tajay Restaurants, Inc. under that certain Amended and Restated Asset Purchase Agreement dated December 17, 2020 among Tajay Restaurants, Inc., Yummy Seafoods, LLC, and Silver Seafoods, Inc. and all related documents and agreements (the "Asset Purchase Agreement");
2. that certain promissory note from Silver Seafoods, Inc payable to Tajay Restaurants, Inc. in the amount of $100,000, bearing 5% interest per annum, and payable in four equal annual installments (the "Tajay Restaurants Note");
3. any credit card accounts receivable and any cash due to, or in accounts of Tajay Restaurants, Inc. after the final reconciliation required under the Asset Purchase Agreement with Silver Seafoods, Inc.; and
4. any and all Avoidance Actions of Tajay Restaurants, Inc. against any parties, other than the shareholders of Tajay Restaurants, Inc., who were released from all such claims under the Asset Purchase Agreement; and
5. books and records Tajay Restaurants, Inc. requires for legal and regulatory compliance.

Yummy Seafoods, Inc.

1. All of the rights of Yummy Seafoods, LLC under that certain Amended and Restated Asset Purchase Agreement dated December 17, 2020 among Tajay Restaurants, Inc., Yummy Seafoods, LLC, and Silver Seafoods, Inc. and all related documents and agreements (the "Asset Purchase Agreement");
2. that certain promissory note from Silver Seafoods, Inc payable to Yummy Seafoods, LLC in the amount of $100,000, bearing 5% interest per annum, and

       payable in four equal annual installments (the "Yummy Seafoods Note");
3. any credit card accounts receivable and any cash due to, or in accounts of Yummy Seafoods, LLC after the final reconciliation required under the Asset Purchase Agreement with Silver Seafoods, Inc.;
4. any and all Avoidance Actions of Yummy Seafoods, LLC against any parties, other than the shareholders of Yummy Seafoods, LLC, who were released from all such claims under the Asset Purchase Agreement; and
5. books and records Yummy Seafoods, LLC. requires for legal and regulatory compliance.

      2.03    **The Creditors Trust.** The Creditors Trust shall be administered by a trustee (the "Trustee") who shall serve until all assets of the Creditor's Trust have been liquidated and proceeds distributed under the terms of the Plan and the Creditors' Trust is terminated or until the trustee resigns or is removed.

      Except as set forth below, the Trustee will be authorized take all actions necessary to administer the Creditors' Trust, to protect the assets and enforce or compromise the rights of the Creditors Trust, to retain professionals, to make distributions to the creditors under the terms of the Plan, and to seek the entry of an order closing the bankruptcy case upon substantial consummation of the Plan

      The Trustee will maintain segregated accounts for the assets transferred from each of the Debtors. The proceeds from the liquidation or collection of the assets transferred from each of the Debtors shall be deposited in the segregated accounts, and the costs of administration of the assets transferred by each Debtor will be borne by the accounts for each Debtor.

      The Trustee's compensation for collecting and distributing the proceeds of the Tajay Restaurants Note and the Yummy Seafoods Note will be $10,000, $5,000 from the assets transferred from each Debtor, payable at the time and in proportion to the actual disbursements of the proceeds of those notes, plus out of pocket expenses. The Trustee's compensation for the distribution of any other assets shall be 3% of the assets distributed to creditors under the Plan.

      The Trustee shall post a bond at any time prior to the time the trust accounts have balances that exceed $50,000 and such bond shall be in the amount of the maximum estimated balance of the trust accounts. The cost of the bond shall be equally borne by the assets transferred from each of the Debtors.

      The initial Trustee of the Creditors' will be David Montgomery, currently the Chair of the Creditors' Committee.

      A trust committee (the "Trust Committee") will be formed for the purpose of:

1. determining the amount of the trustee's bond;
2. selecting a successor trustee in the event the trustee resigns or is terminated;
3. selecting committee members who resign or are removed;
4. approving any compromise of claims by the trustee;
5. terminating the Creditors Trust after the final distribution to creditors is made.

The initial members of the Trust Committee shall be David Montgomery, Collin Berg and Naveen Mittal, the current members of the Creditors Committee. All Trust Committee decisions will be made by majority vote. Any member can be removed and replaced by vote of two members. Members of the Trust Committee will not be compensated for their service on the Trust Committee but may obtain reimbursement for any out of pocket expenses.

The Trust shall indemnify and hold harmless any person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was the Trustee, or an employee of the Trust, or an agent, attorney, accountant, or other professional for the Trustee, against all costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit, or proceeding, or the defense or settlement of any claim, issue, or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of willful misconduct or gross negligence. Costs or expense incurred by any such entity in defending any such action, suit, or proceeding may be paid by the Trust in advance of the institution or final disposition of such action, suit, or proceeding, if authorized by the Trustee or, if such action, suit or proceeding is against the Trustee, by the Trust Committee.

The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Plan Trustee shall operate and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service

The Committee will file the Creditors Trust Agreement with the Court and give notice to creditors prior to the deadline for transmitting ballots to vote on the Plan.

2.04

### ARTICLE III
### PROVISIONS APPLICABLE TO ALL CLAIMS

3.01 **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtors and/or Debtors' property of whatever character, whether contingent or liquidated, or whether or not allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Claimants will receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtors pursuant to Chapter 7 of the Bankruptcy Code.

3.02 **Allowed Claims**. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03 **Amount of Claims**. If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled shall control, unless the Creditor files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim. If a Creditor files a proof of claim, then the amount stated in the

proof of claim shall control, unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Claim for which a proof of claim is filed, or to a scheduled Claim, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise. If a Claim of an Insider has been scheduled and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed. If a there is not an amount stated on a proof of claim, the amount of the claim shall be deemed to be zero.

      3.04    **Allowance of Post-Petition Interest, Fees and Costs**. Unless otherwise provided in the Plan, a Claim shall not be entitled to post-petition interest, fees or costs.

      3.05    **Filing of Administrative Claims**. Any requests for allowance of Administrative Expense Claims, other than a request for post-petition fees or costs as described in Section 3.07 below, shall be filed within sixty (60) days after the Effective Date or shall be barred.

      3.06    **Filing of Requests for Post-Petition Fees or Costs**. Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within sixty (60) days after the Effective Date or shall be barred.

      3.07    **Objections to Claims**. The Committee can file an objection to any claim prior to the payment of such claim. Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Trustee may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

      3.08    **Distributions on Contested Claims**. No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. When and if a Contested Claim becomes an Allowed Claim, the Trustee shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the Effective Date. If a Claim is disputed in whole or in part because either Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Bankruptcy Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE IV
## ADMINISTRATIVE EXPENSE CLAIMS

4.01    **Administrative Expense Claims and Other § 507(a)(2) Priority Claims**. Where required by the Bankruptcy Code, and upon approval by the Bankruptcy Court, the Debtor shall pay the Administrative Expense Claims of the Bankruptcy Case, allowed pursuant to § 503 of the Code, and each Allowed Claim entitled to priority pursuant to § 507(a)(2) of the Code, on a current basis.

## ARTICLE V
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Classification**. Claims and Equity Interests are classified and treated as follows:

5.01    **Class 1 Claims** -- Allowed Unsecured Claims against Tajay Restaurants, Inc.

This class consists of all Allowed Unsecured Claims against Tajay Restaurants, Inc. After payment of Class 1 Claims, all Allowed Claims in this class will be paid pro rata out of distributions of proceeds from the assets of Tajay Restaurants, Inc. by the Trustee of the Creditors Trust at times and in amounts to be determined by the Trustee.

Class 1 Claims are impaired and entitled to vote.

5.02    **Class 2 Claims** - Allowed Unsecured Claims against Yummy Seafoods, LLC

This class consists of all Allowed Unsecured Claims against Yummy Seafoods, LLC. After payment of Class 2 Claims, All Allowed Claims in this class will be paid pro rata out of distributions of proceeds from the assets of Yummy Holdings, LLC by the Trustee of the Creditors Trust at a time and manner to be determined by the Trustee.

Class 2 Claims are impaired and entitled to vote.

5.03    **Class 3 Interests** – Equity Interests of the Debtor. Holders of Equity Interests in the Debtor shall retain their interests. Equity Interests shall not have any rights in the Creditors Trust or its assets and shall not receive any distributions from the Creditors Trust.

Class 3 Interests are unimpaired.

## ARTICLE VI
## IMPLEMENTATION OF THE PLAN

6.01    **Implementation of the Plan**. This Plan will be implemented pursuant to 11 U.S.C. § 1123(a) as set forth above—that is, by payments to Creditors and the satisfaction of the Liens and security interests of Secured Creditors with Allowed Claims through either the sale of the Property or the conveyance of property to the Secured Creditors.

6.02     **In General**. If this Plan is approved by the Court, a Confirmation Order will be entered. The Debtor will continue to operate as a debtor in possession and discharge its duties under Chapter 11 until the Effective Date of the Plan.

6.03     **Authorization**. The Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code. To this end, the Debtor is authorized and directed to execute all documents necessary or appropriate to effectuate the terms of the Plan.

## ARTICLE VII
## CAUSES OF ACTION

7.01     **Article 5 Causes of Action**. The Creditors Trust reserves all rights to pursue, in its sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws except for any claims that have been released by a Debtor in an order entered by the Court before the confirmation of this Plan.

ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE PREFERENCES UNDER §547 OF THE CODE OR FRAUDULENT TRANSFERS UNDER §544 OR §548 OF THE CODE WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY PUT ON NOTICE THAT THE TRUSTEE MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF DEBTOR'S CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED BY AN ORDER OF THE COURT PRIOR TO THE CONFIRMATION OF THIS PLAN, IN THIS PLAN, OR IN THE CONFIRMATION ORDER.

7.02     **Other Potential Litigation**. In addition to preferences and fraudulent transfer claims, the Trustee may also have claims and causes of action against third parties and creditors arising prior to the Petition Date. These causes of action may be prosecuted by the Trustee or enforced by way of setoff against Claims filed against the bankruptcy estate. The Trustee has sole discretion to prosecute any such litigation and to object to any Claims.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

8.01     **Vesting of Property**. As of the Effective Date, the Creditors Trust shall be vested with all Property of their respective Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan. Such Property of the Estate shall include all claims or causes of action arising in favor of the Debtor, under the Bankruptcy Code or any other applicable law.

8.02     **Plan Binding**. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtors, the Debtors' Creditors, and the holder of the Equity Interest in the Debtor, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

8.03     **Reliance on Other Parties**. In connection with the Plan, the Creditors Committee and its members, representatives, attorneys, accountant, and agents may rely upon the opinions of

counsel, certified public accountants, and other experts or professionals employed by the Creditors Committee, and such reliance shall presumptively establish good faith.

8.04 **Discharge**. Confirmation of the Plan shall not discharge the Debtor of any of its debts.

8.05 **Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Creditors Trust. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Creditors Trust or its assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Creditors Trust or its assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the the Creditors Trust or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Creditors Trust or its assets except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

## ARTICLE IX
## MODIFICATION OF THE PLAN

9.01 **Post-Confirmation Modification**. The Creditors Committee as proponent of the Plan may modify it at any time after Confirmation but before the Bankruptcy Case is fully administered, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, that the Bankruptcy Court, after notice and hearing, confirms such modified Plan under § 1129, and that the circumstances warrant such modification.

9.02 **Deemed Acceptance or Rejection**. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court such holder changes its previous acceptance or rejection.

## ARTICLE X
## POST CONFIRMATION MATTERS

10.01 **Application for Final Decree**. The Creditors Trust shall file an application for final decree as soon as is practicable after the Effective Date.

10.02 **U.S. Trustee**.

(a) **Fees**. All outstanding U.S. Trustee fees shall be paid by the Debtors on the Effective Date.

  (b) **Reports**. The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the Bankruptcy Case is closed.

## ARTICLE XI
## RETENTION OF JURISDICTION

 11.01 **Jurisdiction over Matters**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtors arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtors that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtors' Estates, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

## ARTICLE XII
## MISCELLANEOUS

 12.01 **Request for Relief under 11 U.S.C. § 1129(b) – "Cramdown."** In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Creditors Committee reserves the right to, and does hereby, request the Court to confirm the Plan in accordance with 11 U.S.C. § 1129(b). Any and all payments pursuant to this Plan, either pre- or post-confirmation shall be considered "new value" for purposes of that section.

 12.02 **Pre-Confirmation Amendment, Withdrawal/Revocation**. The Creditors Committee, as the proponent of the Plan, reserves the right to amend or withdraw/revoke the Plan at any time prior to the Confirmation Date. If the Creditors Committee withdraws or revokes the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

 12.03 **Entire Agreement**. The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtors and their Creditors relating to the subject matter hereof and supersede all prior discussions and documents.

 12.04 **Payments**.

  (a) **Delivery**. Any payments or distributions made by the Creditors Trust pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Creditors Committee with a change of address. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property

of the Creditors Trust and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

(b) **Voided Checks**. Checks issued by the Trustee in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Trustee of the Creditors Trust, by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Trustee of the Creditors Trust in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Creditors Trust.

12.05 **Governing Law**. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

Dated: September 28, 2020.

PLAN PROPONENT:

**The Official Committee of Unsecured Creditors**

By: */s/ David Montgomery*
David Montgomery
Committee Chair

*/s/Stephen A. Roberts*
Stephen A. Roberts
CLARK HILL STRASBURGER
720 Brazos, Suite 700
Austin, Texas 78701
512.499.3624
512.499.3660 (fax)
sroberts@clarkhill.com

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS